UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALLSTATE INSURANCE CO.,

    Plaintiff,

       v.                                No. 10 CV 365
                                      Judge James B. Zagel

MENARD, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

       Something caught fire in the home of Miguel Jiminez on January 24, 2009, damaging the home and Jiminez's personal property. Jiminez's insurer, Plaintiff Allstate Insurance Company ("Allstate"), covered the loss with a payment to him of approximately $164,630.06. Allstate then sued the retailer Menard, Inc. ("Defendant" or "Menard"), on the theory that the fire was caused by an artificial Christmas tree Menard had sold to Jiminez.

       The case is in this court under the diversity jurisdiction.[1] Before me is Defendant's fully briefed motion for summary judgment. For the following reasons, the motion is denied.

## BACKGROUND

*Facts*

       Viewed in a light most favorable to the non-movant, Allstate, the facts are as follows. Miguel Jiminez owned a home located at 22 South Aldine Avenue in Elgin, Illinois, which home was insured by Allstate. After a fire loss on January 24, 2009, Jiminez filed a claim with

---

[1] It is undisputed that Allstate is an Illinois corporation with its principal place of business in Northbrook, Illinois, that Menard is a Wisconsin corporation with its principal place of business in Eau Claire, Wisconsin, and that the amount in controversy comfortably exceeds $75,000.

1

Allstate.  Allstate paid $164,630.06 on the claim and became subrogated to all rights, claims, and interests Jiminez had against any person or entity responsible for the claim.

Jiminez left his house between 7:00pm and 9:00pm on the evening of January 24, 2009.  At the time Jiminez left, nobody was in the home.  Jiminez has a renter who has independent access to the home.  The renter is a smoker, but Jiminez does not allow the renter to smoke inside the home because Jiminez has a young daughter who visits periodically and Jiminez does not want the girl exposed to smoke.

At approximately 8:53pm, a fire was reported in Jiminez's home.  The first fire officer on the scene, Lieutenant Hollis Miller, witnessed that the items involved in the fire were the south-facing end of a couch, the items in the southeast corner of the room immediately south of the couch, and an area around the window on the south wall of the room.  The items in the southeast corner included the couch, a chair, a "single duplex electric receptacle" (i.e., a common outlet) a cell phone charger, a table lamp, a halogen floor lamp, and an artificial Christmas tree.

Jiminez bought the Christmas tree, marketed under the name "Bling Thing," on Christmas Eve, 2007 at a Menard store on Randall Road in Elgin, Illinois.  The tree was pre-wired with decorative lights.  When Jiminez purchased the tree, it did not come with a box or any instructions.  Since making the purchase, Jiminez would put up the pre-assembled Christmas in his living room annually from approximately December until early February.  Jiminez put the tree up himself and did not add any ornaments, as it was "already very beautiful" and contained lights.  Jiminez never changed the tree, repaired it, nor changed any light bulbs.  During the periods when Jiminez left the tree displayed, he would leave the tree lights plugged in and running for weeks at a time.  At the end of the holiday season, Jiminez would put a large bag

over the tree and store it in his basement.

Jiminez testified at his deposition that he left the Christmas tree plugged in on the night of the fire, January 24, 2009. He testified that there were no other lights on in the living room other than the tree lights.

*Expert Testimony*

In seeking to prove that the Christmas tree caused the fire, Plaintiff offers the conclusions of three expert investigators. Defendant does not dispute the qualifications of the experts, so I do not recount them here.

Plaintiff's first expert is Randal Freise, a fire investigator for the Elgin Fire Department. Along with an assistant, Scott Smith, Freise conducted an investigation "expressly adhering to the scientific methods and procedures set forth by" the National Fire Protection Association's *Guide for Fire and Explosion Investigations*. Freise/Smith's investigation included a full scene investigation, photo documentation, diagramming, a fire pattern and damage analysis, and an extensive examination of all the artifacts dug out from the scene.

Freise determined that the fire originated in the southeast corner of the room in Jiminez's home and then spread in a north and westward direction. Freise noted that the source area had "a very limited number of first items ignited," including some decorative candles, a mobile charger, two lamps, and the electrical outlet, and the Christmas tree. He then considered the items and concluded that the source item was not: 1) the candles, 2) the phone charger, 3) the table lamp, 4) the floor style lamp, 5) the electric receptacle, or 6) the main electric system of the house. Having eliminated those sources, Freise concluded "the ignition source to this fire was the Christmas tree." Freise further opined that "[a]n electrical malfunction caused a high heat

3

condition which ignited the available combustibles located within the Christmas tree" and that the abundance of plastic on the tree allowed the fire spread to the couch and other nearby contents of the living room.

Plaintiff's second expert is Nicholas Steker, an investigator hired from Rayburn Fire Scene Investigations. His report concluded that no other fuel sources were in the area and that the "pre-lit" Christmas tree was the source, though he said the precise point on the tree where the failure occurred was "undetermined." Steker's conclusion that no other fuel sources were in the area was based on Jiminez's comments to him that the tree was the only "energized" item in the area where the fire originated. Steker concluded his report with a recommendation that an electrical engineer investigate the Christmas tree to further pinpoint the cause of the accident.

Plaintiff's final expert is Ben Mills. Mills is an electrical engineer for Scientific Expert Analysis (SEA). Mills' charge was "to evaluate the electrical components . . . within the origin area that was predefined by [] Steker." Mills conducted an on-scene inspection of the fire area on March 18, 2009, where he conducted a visual examination of the site and collected electrical artifacts for future laboratory examinations.

Mills conducted several follow-up examinations of the artifacts. On July 10, 2009, the artifacts were transported to a facility for x-ray analysis. On April 5, 2010, a laboratory analysis was conducted at SEA's facility. An additional x-ray examination took place on December 14, 2010 and a follow-up laboratory examination was conducted on January 1, 2011 back at SEA's facility. Finally, Mills returned to the scene of the fire on July 13, 2011. He collected more artifacts and conducted an additional laboratory examination at SEA.

Mills indicated that he could not identify a specific electrical malfunction of the

4

Christmas tree and, based on the condition of the tree's remains, expressed doubt that any such failure could be identified. Notwithstanding this admission, his ultimate conclusions were as follows: (1) the fire originated "within the Christmas tree" located on the southeast corner of the living room; (2) "[o]nly the Christmas tree and phone charger were plugged into the south wall receptacle" at the time of the fire; (3) based on "[l]aboratory inspection of the lamps, phone charger, and building electrical [those] components [were] eliminated … as potential ignition sources for the fire"; (4) "[t]he only electrical ignition source within the origin area was the Christmas tree lighting"; (5) "due to the extent of the physical damage to the tree, … identifying a specific point of failure"/electrical malfunction may not be possible; and (6) "[n]o other electrical ignition sources were identified within Mr. Stecker's origin area."

**ANALYSIS**

Allstate sued Menard on the theory that a non-specific malfunction within the electrical components of the Christmas tree resulted in an ignition of the tree, causing the fire at Miguel Jiminez's home. Allstate's specific legal theories are state law counts for negligence, strict product liability, and breach of the implied warranty of merchantability. The parties agree, however, that these distinct theories are functionally indistinct here in that all three counts turn on 1) the presence of a defect which existed at the time it left the manufacturer's hands and 2) that the defect proximately caused the fire. I determine that Plaintiff has put forth evidence sufficient to survive summary judgment.

A plaintiff in a products liability must prove, through either direct or circumstantial evidence, that the product had a defect or malfunctioned. *Schultz v. Hennessy Indus., Inc.,* 584 N.E.2d 235, 241 (Ill. App. Ct. 1991). If a plaintiff, as here, concedes that they cannot pinpoint a

5

specific defect, the plaintiff may yet create an inference that a product was defective by direct or circumstantial evidence that: (1) there was no abnormal use of the product; (2) that there was no reasonable secondary cause of the injury; and (3) that the product failed to perform in the manner reasonably to be expected in light of its nature and intended function. *Doyle v. White Metal Rolling & Stamping Corp*., 618 N.E.2d 909, 915 (Ill. App. Ct. 1st Dist. 1993) (citing *Tweedy v. Wright Ford Sales, Inc.* 357 N.E.2d 449 (Ill. 1976).

Defendant makes two arguments in favor of summary judgment. The first argument is that the non-specific defect theory on which Plaintiff relies should not be applied to this case. In support, Defendant first cites to *Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 984 (N.D. Ill. 2010), a federal case applying Illinois law, for the proposition that non-specific defect theories are not *per se* accepted in strict liability cases. This is true enough, but the case clearly also notes that such a theory is "sometimes" appropriate. *See id.* So *Show* is not dispositive.

Defendant then offers *Dyback v. Weber*, 500 N.E.2d 8, 13-14 (Ill. 1986) for the proposition that, in Defendant's words, "circumstantial evidence to support non-specific defect claims is rarely allowed in cases involving fires of unknown origin." A full review of *Dyback*, however, reveals that it was clearly a fact-intensive opinion and no such general principle can be drawn from it. The *Dyback* court ultimately held that, where a plaintiff claimed that the cause of fire was a fuel-oil heater left in a house under construction "the mere presence of the heater, without more . . . neither constituted negligence nor reasonably permitted an inference of negligence" under a non-specific defect claim. *Id.* at 14. Notably, *Dyback* cites approvingly to four disparate opinions in which the non-specific theory was applied in favor of the plaintiffs. *Dyback*, 500 N.E.2d at 14. The court found *Dyback* to be distinguishable on its facts, stating

"there were other surrounding circumstances beyond the fire itself to support an inference of negligence" in those other cases.

In this case, Plaintiff clearly offers more than the mere presence of the tree to support its claims of negligence and strict liability. *Dyback* does not preclude application of the non-specific defect theory. So, like *Show*, *Dyback* does not stand for any general statement of law that would support summary judgment for Menard.

Defendant's next argument is that even if a non-specific defect theory is available here, Allstate's evidence – primarily the expert testimony – is not sufficient to withstand summary judgment.

Neither the first nor third prongs of the non-specific defect route are at issue here. As to the first prong, Plaintiff has put forth evidence that Jiminez stored the tree in essentially the same manner as Menard did when it sold the tree to him – covered with a plastic bag. Further, Jiminez testified in his deposition that he did not modify, repair, or further decorate the tree. More to the point, Defendant does not challenge the "no abnormal use" prong. Similarly, Defendant does not challenge the third prong. Assuming for the sake of argument that the product burst into flames, it clearly did not perform as expected.

What is at issue is the second prong, or elimination of other reasonable causes of the fire. Defendant argues that Plaintiff's experts failed to adequately eliminate alternative sources for the fire, such as the candles, the halogen floor lamp, and smoking paraphernalia.

Circumstantial evidence will negate other reasonable causes of an accident only if the evidence "justifies an inference of probability as distinguished from mere possibility." *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1027 (7th Cir. Ill. 1991) (citing *Varady v. Guardian Co.,* 153

506 N.E.2d 708, 711 (Ill. App. Ct. 1987); *see also Mateika v. LaSalle Thermogas Co.*, 418 N.E.2d 503, 49 (Ill. App. Ct. 1981). Here, Plaintiff's expert Freise expressly considered the candles and the floor lamp. Regarding the candles, he noted that "[t]he candles were found within a decorative holder and showed no evidence of ever being lit. The wicks on the candles appeared to have never been burned in the past and candles were found outside of the area of origin." As for the floor lamp, Freise indicated that it was within the area of origin but that the only fire damage it suffered appeared to be "impingement," which in context appears to mean only external, superficial damage. Moreover, Freise noted that the lamp was unplugged and that Jiminez testified he was not actively using the lamp at the time. The other experts testified substantially to the same effect.

All of this is not to say that the experts are correct or unimpeachable. Any flaws noted by Menard are the proper subject of cross examination of Allstate's expert. But this is Menard's motion for summary judgment, and Plaintiff's evidence "justifies an inference of probability" that the other sources were not the cause. *See Parker*, 940 F.2d at 1027.

It is true that Freise – as well as the other experts – did not consider smoking items as a possible cause of the fire beyond simply adopting Jiminez's claim that no smoking took place in the house. Nevertheless, the Illinois appellate courts have routinely held that "a genuine issue of material fact may be found to exist in a case of product liability even if the plaintiff fails to disprove all other possible causes of his injury." *Davis v. Material Handling Assocs.,* 929 N.E.2d 1229, 1234 (Ill. App. Ct. 2010) (citing *Stewart v. B.F. Goodrich Co.,* 506 N.E.2d 783 (Ill. App. Ct. 1987); *Varady v. Guardian Co.,* 506 N.E.2d 708 (Ill. App. Ct. 1987); *Tulgetske v. R.D. Werner Co.*, 408 N.E.2d 492 (1980)). Having disposed of the items in the immediate area of the

8

origin of the fire – e.g., the lamps, the candles, and the house electrical system – the experts declined to list every metaphysically conceivable source of the fire. The Illinois courts have found this to be sufficient to allow a case to proceed to trial for a jury to consider the weight of evidence.

Menard puts forth a related argument that Plaintiff's experts have not adequately shown that the tree was the cause. To a large extent, their determination on this point was derivative of their having eliminated the other possible causes. Yet there was independent evidence noted by the experts pointing to the tree as the cause. For instance, the Freise report states that "a circular burn pattern with very heavy charring was noted on the floor directly below where the tree was positioned. Within the center of the circular patter[n] was a point of extremely heavy charring that nearly burned through the main floor." Based on that observation and the apparent progression of the burn pattern outward from that position, Freise determined the precise spot where the tree had been standing was "the point of origin."

A plaintiff in Allstate's position "need only establish a credible basis for a reasonable inference that a condition of the product proximately caused the injury and for elimination of reasonable secondary causes." *Levin v. Lear Siegler Diversified Holdings Corp.,* 1992 U.S. Dist. LEXIS 8228, 16-17 (N.D. Ill. June 10, 1992) (citing *Phillips v. U.S. Waco Corp.*, 516 N.E.2d 670, 674 (Ill. App. Ct. 1987)). Allstate has done so.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: August 7, 2012